UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHELE SWINGLE,
                         Plaintiff,

v.                                       3:04-CV-1115
                                                  (DNH/GHL)
MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,
                         Defendant.
_____

APPEARANCES:                                 OF COUNSEL:

LACHMAN, GORTON LAW FIRM               PETER A. GORTON, ESQ.
*Counsel for Plaintiff*
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089

HON. GLENN T. SUDDABY                   WILLIAM H. PEASE, ESQ.
United States Attorney for the              Assistant United States Attorney
 Northern District of New York
*Counsel for Defendant*
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

## REPORT AND RECOMMENDATION[2]

**I.    BACKGROUND**

    **A.    Procedural History**

---

[1]     The complaint named Jo Anne B. Barnhart as Defendant, then the Commissioner of Social Security. On February 12, 2007, Michael J. Astrue assumed that position. Therefore, he shall be substituted as the named Defendant pursuant to Fed. R. Civ. P. 25(d)(1).

[2]     This matter was referred to me for report and recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

Plaintiff protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") on January 3, 2001. (Administrative Transcript ("T") at 15, 33-36, 52-54, 266-271.) The applications were denied initially on November 7, 2001. (T. at 33-36, 267-271.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on December 3, 2002. (T. at 283-317.) On May 28, 2003, ALJ Joseph Hillegas issued a decision finding that Plaintiff was not disabled. (T. at 12-32.)

Plaintiff appealed to the Appeals Council, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on July 30, 2004. (T. at 4-7.) Plaintiff commenced this action on September 23, 2004. (Dkt. No. 1.)

### B.     The Contentions

Plaintiff makes the following claims:

(1)  The ALJ erred in finding that Plaintiff's condition did not meet or equal a listed impairment. (Dkt. No. 7 at 9-10.)

(2) The ALJ's finding as to Plaintiff's nonexertional limitations is not supported by the medical evidence. (Dkt. No. 7 at 4-6.)

(3) The ALJ erred in finding that Plaintiff's subjective complaints were not fully credible. (Dkt. No. 7 at 6-8.)

(4) The hypothetical questions posed to the vocational expert did not include all of Plaintiff's nonexertional limitations. (Dkt. No. 7 at 8-9.)

Defendant disagrees, and argues that the decision should be affirmed. (Dkt. No. 8 at 1-26.)

**II.     APPLICABLE LAW**

   **A.     Standard for Benefits**

To be considered disabled, a plaintiff seeking DIB or SSI benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2004). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520 (2005). "If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R. §§] 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA

> assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.[ ] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.[ ] [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003). If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy. *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

    B.    **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Serrano*, 2003 WL 22683342, at *10; *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination

of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**III.    THE PLAINTIFF**

Plaintiff was born on November 28, 1961. (T. at 52.) She completed the sixth grade. (T. at 70.) Plaintiff last worked as a heavy equipment operator and a tractor trailer driver. (T. at 64-65, 291.) She previously worked as a cleaner. (T. at 65, 292.) Plaintiff alleges disability due to a traumatic brain injury, head trauma and brain contusions due to a car accident in 1990, depression, memory loss, tremors, right side deficit, weakness, and pain. (T. at 64.)

**IV.    THE ALJ'S DECISION**

The ALJ found that: (1) Plaintiff had not engaged in any substantial gainful activity since February 8, 1999 (T. at 16, 31); 2) Plaintiff suffered from the following severe impairments:

traumatic brain injury, depression, and a back disorder (T. at 16-17, 31); 3) Plaintiff's severe impairments did not meet or equal a listed impairment (T. 17-21, 31); 4) Plaintiff retained the residual functional capacity ("RFC") to perform light work that involved simple one-two step tasks, minimal contact with the public, and a low stress environment; accordingly she was unable to perform her past relevant work as a heavy equipment operator and tractor trailer driver (T. at 21-29, 31); 5) Considering the testimony of a vocational expert and the Medical-Vocational Guidelines, the ALJ found that there were a significant numbers of jobs in the regional or national economy that Plaintiff could perform. (T. at 29-32.) Thus, the ALJ concluded that Plaintiff was not disabled. (T. at 31-32.)

## V.     DISCUSSION

### A.     The ALJ Did Not Err in Finding that Plaintiff's Condition Did Not Meet or Equal a Listed Impairment

A claimant is automatically entitled to benefits if his or her impairment(s) meets the criteria set forth in Appendix 1 to Subpart P of Part 404. 20 C.F.R. § 404.1520(d) (2007) (the "Listings"). Plaintiff first claims that the ALJ erred by failing to find that her condition met the requirements of Listings 12.05(C). (Dkt. No. 7 at 9.) Defendant claims that there is "absolutely no evidence" that Plaintiff met all of the requirements of Listing 12.05(C) prior to the required age. (Dkt. No. 8 at 21.)

Listing 12.05 provides as follows:

12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

> . . . .
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (2007).

For support, Plaintiff points to findings made by consultative examiner, Brett T. Hartman, Psy. D.  (Dkt. No. 7 at 9.)  On April 2, 2001, Dr. Hartman conducted an organicity evaluation and found that Plaintiff had a verbal scale IQ of 77, performance scale IQ of 70, and full scale IQ of 72. (T. at 200-201.)  While Plaintiff's performance scale IQ of 70 falls within the range of 60 through 70 required by Listing 12.05(C), Plaintiff was thirty-nine years old at the time of the evaluation.  (T. at 200.)  As noted above, this Listing requires that "the evidence demonstrates or supports onset of the impairment *before age 22*."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (emphasis added).  As such evidence does not demonstrate or support onset before age 22, Plaintiff failed to establish that she met the requirements of Listing 12.05(C).  Therefore, the Court declines to recommend remand on this basis.

Plaintiff next argues that "in the event that [her diminished IQ] was the result of the organic brain injury, the [ALJ] should have given greater consideration to [L]isting 12.02."  (Dkt. No. 7 at 9-10.)  Listing 12.02 provides as follows:

> 12.02 Organic Mental Disorders: Psychological or behavioral abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Demonstration of a loss of specific cognitive abilities or affective changes and the

>medically documented persistence of at least one of the following:
>
>1. Disorientation to time and place; or
>2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or
>3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or
>4. Change in personality; or
>5. Disturbance in mood; or
>6. Emotional lability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or
>7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria-Nebraska, Halstead-Reitan, etc.;
>
>AND
>
>B. Resulting in at least two of the following:
>
>1. Marked restriction of activities of daily living; or
>2. Marked difficulties in maintaining social functioning; or
>3. Marked difficulties in maintaining concentration, persistence, or pace; or
>4. Repeated episodes of decompensation, each of extended duration[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02 (2007).

Plaintiff claims that she met the requirements of sections (A) and (B). (Dkt. No. 7 at 9-10.) Examining section (B) first, Plaintiff claims, without citing to the record, that "the first three sets of criteria in [section] 'b' are . . . met assuming that the consultative examiners are correct in assessing the credibility of the claimant since she testified to the examiners as to her marked impairments in social functioning, concentration and daily activities." (Dkt. No. 7 at 10.) However, no consultative examiner specifically concluded that Plaintiff had a marked restriction of activities of daily living; marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace. Moreover, Thomas Harding, Ph.D., a non-examining State Agency physician, completed a Psychiatric Review Technique Form in which he indicated that

Plaintiff had no "marked" restrictions under Listing 12.02. (T. at 226-236.) Rather, he found a "slight" restriction of activities of daily living; "moderate" difficulties in maintaining social functioning; "mild" deficiencies in maintaining concentration, persistence or pace; and "one or two" repeated episodes of deterioration. (T. at 236.) The opinions of State agency physicians, such as Dr. Harding, are considered as the expert opinions of non-examining medical sources. *See* 20 C.F.R. §§ 404.1527(f), 416.927(f) (2007); *see also* S.S.R. 96-6p, 1996 WL 374180, at *1 (S.S.A. July 2, 1996). Indeed, "State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). Thus, Plaintiff failed to establish that she met the requirements of 12.02(B). Since Plaintiff failed to establish that she met the requirements of section (B), the Court need not examine whether Plaintiff met section (A) because both sections (A) and (B) must be met for a claimant to be found disabled under Listing 12.02. Accordingly, this claim is without merit and the Court declines to recommend remand on this ground.

**B.     The ALJ's Statement of The Evidence Upon Which He Relied to Support His RFC Assessment Was Insufficient**

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2007). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomatology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, D.J.) (citing 20 C.F.R. §§ 404.1545, 416.945).

To properly ascertain a claimant's RFC, an ALJ must assess a claimant's exertional capabilities, addressing his or her abilities to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. § 404.1569a(b) (2007). Non-exertional limitations or restrictions must also be considered. 20 C.F.R. § 404.1569a(c); *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). Examples of non-exertional limitations include difficulty functioning because one is nervous, anxious, or depressed; difficulty maintaining attention or concentrating; or difficulty understanding or remembering detailed instructions. 20 C.F.R. § 404.1569a(c). "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations." *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997) ("Commissioner bears the burden of demonstrating the claimant's capacity to perform each of the RFC elements and must proffer specific medical evidence in support of such demonstration.") (citations omitted).

Additionally, an RFC assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945."[3] S.S.R. 96-8p, 1996 WL 374184, at *1 (S.S.A. 1996). Only then may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy. S.S.R. 96-8p, 1996 WL 374184, at *1.

---

[3] The functions in paragraph (b) include "certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . ." 20 C.F.R. §§ 404.1545(b), 416.945(b). The functions in paragraph (c) include "certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting . . . ." 20 C.F.R. §§ 404.1545(c), 416.945(c). The functions in paragraph (d) include "[s]ome medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions . . . ." 20 C.F.R. §§ 404.1545(d), 416.945(d).

When determining a claimant's RFC, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities will not suffice. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris*, 728 F.2d at 588). Indeed, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." S.S.R. 96-8p, 1996 WL 374184, at *7.

In this case, the ALJ found that Plaintiff had the following RFC:

[Plaintiff] retains the [RFC] to perform the exertional demands of light work, or work which requires maximum lifting of twenty pounds and frequent lifting of ten pounds. [Plaintiff] also can stand for six hours in an eight[-]hour workday, is able to walk for six hours in an eight[-]hour workday, and can sit for six hours in an eight[-]hour workday. However, she is limited to simple one-two step tasks, must have minimal contact with the public, and work in a low stress environment.

(T. at 22.)

Plaintiff argues that the ALJ's finding as to her nonexertional limitations is not supported by the medical evidence.[4] (Dkt. No. 7 at 4-5.) Defendant claims that the ALJ's decision is supported by substantial evidence. (Dkt. No. 8 at 16-20.)

The ALJ stated that he based the RFC determination on the following:

The residual functional assessment is based on the totality of the record including the claimant's statements and testimony about her ability to perform activities of daily living. It is also based upon the medical opinions of the treating sources or other acceptable medical sources to the extent they are supported by medical signs, findings, or observable phenomena, and not inconsistent with the record as a whole. Further, it is supported by the assessments of Dr. George Wootan, examining physician, and Dr. Brett T. Hartman, examining mental health professional, and is generally supported by the assessment of the State Agency medical/psychological consultants (Exhibits 12F, 13F, 14F, 16F, 17F, and 19F).

---

[4] Plaintiff stated that she does not dispute the finding as to her exertional abilities. (Dkt. No. 7 at 1-2.)

(T. at 23.)

It was error for the ALJ merely to make this general reference to the evidence on which he based the RFC determination.  "The RFC assessment must include a narrative discussion *describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g. daily activities, observations).*"  S.S.R. 96-8p, 1996 WL 374184, at *7 (emphasis added).  While the ALJ referred to the assessments completed by Drs. Wootan and Hartman and cited several exhibits, it is simply unclear on which specific medical facts in those pieces of evidence the ALJ relied in determining that Plaintiff had certain nonexertional limitations but did not have other nonexertional limitations.  Morever, the Court declines to speculate as to the ALJ's rationale.

In light of the foregoing, the Court recommends remand for a proper evaluation of Plaintiff's nonexertional limitations.  On remand, the ALJ shall provide a narrative discussion describing how the evidence supports each conclusion as to Plaintiff's nonexertional limitations.

### C. The ALJ Did Not Err in Finding that Plaintiff's Subjective Complaints Were Not Fully Credible

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  20 C.F.R. § 404.1529 (2007); *see also Foster v.*

*Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998); S.S.R. 96-7p, 1996 WL 374186 (S.S.A. 1996). First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) which could reasonably be expected to produce the claimant's pain or other symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2. This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms. *Id.* If no impairment is found which could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities. *Id.* An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled. *Id.*

However, once an underlying physical or mental impairment(s) which could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to evaluate the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. S.S.R. 96-7p, 1996 WL 374186 at *2. Whenever a claimant's statements about the intensity, persistence, and limiting effects of the claimant's pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the claimant's credibility. *Id.* A claimant's symptoms will be determined to diminish his/her capacity for basic work activities to the extent that his/her alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record. *Id.*

A claimant's symptoms can sometimes suggest a greater level of severity than can be shown

by the objective medical evidence alone.  S.S.R. 96-7p, 1996 WL 374186, at *3.  When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. § 404.1529(c)(3).

An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence.  *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

Plaintiff claims that the ALJ failed to evaluate properly her credibility.  (Dkt. No. 7 at 6-8.)  In his decision, the ALJ found that Plaintiff's allegations were not totally credible.  (T. at 23.)  In making his credibility determination, the ALJ found specifically that Plaintiff had "underlying medically determinable impairments that could reasonably be expected to result in the symptoms as alleged."  (T. at 27.)  Thus, the ALJ determined that the first step of the two-step analysis was met.

Turning to step two, the ALJ then had to evaluate the intensity, persistence, and limiting

-14-

effects of Plaintiff's symptoms to determine the extent to which they limited Plaintiff's ability to perform basic work activities. Because Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not substantiated by objective medical evidence, the ALJ had to make a finding as to Plaintiff's credibility using, among other things, the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), (4). In other words, because the objective medical evidence did not substantiate Plaintiff's claim that her impairments were so severe that she could not perform any work activities, the ALJ had to assess Plaintiff's credibility.

In assessing Plaintiff's credibility, the ALJ reviewed and discussed the factors set forth in 20 C.F.R. § 404.1529(c)(3) including: Plaintiff's daily activities; her symptoms and their location, duration, frequency, and intensity; the medication Plaintiff took; the treatment she received; and precipitating and aggravating factors. (T. at 21-28.) In sum, the ALJ's finding that Plaintiff's allegations were not totally credible is supported by substantial evidence, and therefore is entitled to great deference. Therefore, this Court recommends that the finding be affirmed.

To the extent that Plaintiff appears to argue that because, in her view, the consultative examiners found her allegations credible, the ALJ should have found her credible as well, (Dkt. No. 7 at 6-8), the Court notes that it is the ALJ's job to assess a claimant's credibility in accordance with the regulations. *See* 20 C.F.R. § 404.1529. Indeed, "[i]t is the function of the Secretary . . . *to appraise the credibility of witnesses, including the claimant*." *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir.1982) (emphasis added)). Accordingly, this claim is without merit and the Court declines to recommend remand on this basis.

To the extent that Plaintiff claims that the ALJ's credibility analysis contained inaccurate or

-15-

inconsistent statements regarding the non-addictive nature of ibuprofen and Plaintiff's alleged meal consumption, (Dkt. No. 7 at 8), these claims are irrelevant. The Court has already determined that the ALJ's credibility determination was supported by substantial evidence. Accordingly, this claim is unavailing and the Court declines to recommend remand on this basis.

### D.     The Hypothetical Questions Posed to the Vocational Expert

Plaintiff argues that the testimony of the vocational expert ("VE") was not substantial since the hypothetical questions posed to the VE did not include all of her nonexertional limitations. (Dkt. No. 7 at 8-9.) Defendant claims that the VE's testimony was well supported. (Dkt. No. 8 at 24-25.)

Because the Court is recommending remand for a proper evaluation of Plaintiff's nonexertional limitations, the Court recommends remand on this issue as well. Upon remand, the ALJ shall obtain the opinion of a VE if Plaintiff's nonexertional limitations present significant limitations. *See Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986) (holding that if a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations" the application of the grids is inappropriate).

**WHEREFORE**, it is hereby

**RECOMMENDED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g)[5] for further proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

---

[5] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2006).

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: June 26, 2007
       Syracuse, New York

                                      George H. Lowe
                                      United States Magistrate Judge